<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW FOGG,<br><br>*Plaintiff*,<br><br>v.<br><br>TOWNSHIP OF MONTCLAIR<br>DEPARTMENT OF POLICE, et al.,<br><br>*Defendants*. | Civil Action No. 23-00809<br><br>**OPINION**<br><br>May 13, 2025 |

**SEMPER**, District Judge.

The current matter comes before the Court on the Montclair Department of Police ("MPD"), Township of Montclair, Sergeant Mongiovi, Officer Sofield, Officer Heiser, Township of Montclair Code Enforcement, Officer Vnencak, and Jason Santarcangelo's (collectively "Defendants") motion to dismiss Plaintiff Matthew Fogg's Second Amended Complaint (ECF 45, "SAC") pursuant to Rule 12(b)(6). (ECF 49, "Def. Mot.") Defendants' motion is unopposed. The Court reviewed all submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

**I.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>[1]**

*Pro se* Plaintiff brings this action stemming from an incident involving the police on February 5, 2019 and from incidents involving Code Enforcement in 2022 and 2023 related to

---

[1] The allegations in the Complaint must be accepted as true solely for purposes of this motion, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff's property at 9 Fidelity Place in Montclair, New Jersey.  (SAC ¶ 17.)  On February 5, 2019, Sergeant Mongiovi and five or six unidentified MPD officers entered Plaintiff's property without permission, questioned his presence in his home, detained and searched him.  (*Id.* ¶¶ 18-20.)  The officers informed Plaintiff they had received a complaint of a break-in at the property, which Plaintiff maintains was false and "a pretext to interrogate" him.  (*Id.* ¶ 21.)  Plaintiff provided proof of ownership of the property to the officers.  (*Id.* ¶ 20.)

From June 16 through August 3, 2022, Plaintiff received multiple code violations of the Township of Montclair ordinances, including for overgrown vegetation and for not registering his property.  (*Id.* ¶¶ 29-30; *see also* Ex. A.)  On October 12, 2022, Plaintiff submitted a citizen complaint to the MPD regarding Sergeant Mongiovi's unlawful search of his home and subsequent pattern of discriminatory practices.  (*Id.* ¶ 31.)  On January 12, 2023, the MPD sent Plaintiff a letter informing him that they investigated the allegations in his citizen complaint and found by a preponderance of the evidence that "the alleged misconduct did not occur and that Sergeant Mongiovi acted appropriately as required by the policies set forth by the Montclair Police Department."  (*Id.*, Ex. B.)

On April 14, 2023, Plaintiff's property was cited for a code violation related to a hazardous sidewalk, which the Township ordered him to repair.  (*Id.* ¶ 34.)  In September 2023, Defendant Santarcangelo "requested the issuance of one or more retaliatory bench warrants" against Plaintiff and "made threats against Plaintiff's liberty."  (*Id.* ¶ 36.)  Plaintiff alleges that non-black homeowners in the same town were not issued warrants or cited for ordinance violations without first receiving warnings.  (*Id.* ¶ 36.)  Plaintiff sustained injuries including emotional distress and financial costs, as well as "loss of peace and enjoyment of life and property, and other non-pecuniary losses."  (*Id.* ¶ 140.)  Plaintiff now seeks compensatory and punitive damages, as well

as "injunctive relief *staying all* enforcement actions or warrants against Plaintiff." (*Id.* at 26) (emphasis in original).

Plaintiff filed this suit on February 10, 2023, and on October 17, 2023 amended his Complaint to assert two counts against Defendants for violating his constitutional rights pursuant to 42 U.S.C. §§ 1981 and 1983. (*See* ECF 1, ECF 12.) On August 30, 2024, this Court dismissed the Amended Complaint on a motion pursuant to Rule 12(b)(6) with prejudice as to the Section 1983 claim and without prejudice as to the Section 1981 claim. (ECF 39, "Semper Op." at 7.) Plaintiff filed a Second Amended Complaint ("SAC") on October 31, 2024, in which he restates his Section 1981 (Count I) and 1983 (Count II) claims, and newly alleges a conspiracy claim pursuant to 42 U.S.C. § 1985 (Count V), violations of the New Jersey Law Against Discrimination (Counts III and IV), the Civil Rights of Institutional Persons Act (Count VIII), as well as a false light tort (Count VI), a negligent hiring claim (Count VII), a *Bivens* claim (Count IX), and a claim for intentional infliction of emotional distress (Count X). (*See* SAC ¶¶ 52-137.) Defendants filed the instant motion to dismiss on November 22, 2024. (*See* Def. Mot.) Plaintiff did not oppose or otherwise respond to Defendants' motion.

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability

requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). It is well established that a *pro se* complaint "however inartfully pleaded[,] must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court is obligated to construe *pro se* claims liberally and afford *pro se* plaintiffs the benefit of every doubt. *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III. ANALYSIS

#### A. Constitutional Claims[2]

##### 1. Section 1981 Discrimination

Plaintiff asserts that Defendants unlawfully discriminated and retaliated against him in violation of 42 U.S.C. § 1981 ("Section 1981"). (SAC ¶ 53.) To state a claim under Section 1981, a plaintiff must plausibly allege: (1) that he "is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute," which include the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796-97 (3d Cir. 2001) (citing 42 U.S.C. § 1981(a)).[3] The Supreme Court has recognized the "specific function" of Section 1981: "[i]t protects the equal right of 'all persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (citing 42

---

[2] Plaintiff attempts to replead his Section 1983 claim, which this Court found to be barred by the statute of limitations and dismissed with prejudice on August 30, 2024. (Semper Op. at 7.) Plaintiff now argues that Defendants "continued their discrimination through 2022 and again in January 2023." (SAC ¶ 69.) Plaintiff alleges that Defendants violated his Fourth and Fifth Amendment rights during the February 5, 2019 incident and invokes the continuing violation doctrine to ask this Court to toll the applicable two-year statute of limitations. (*Id.* ¶¶ 67, 73-76.) The continuing violation doctrine provides: "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period[.]" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (internal quotations and citation omitted). The "doctrine's focus is on affirmative acts of the defendants." *Id.* Not only do the alleged acts in 2022 and 2023 involve Defendants who were not present nor involved in the 2019 incident, the later actions do not concern violations of Plaintiff's Fourth or Fifth Amendment rights. The Court therefore declines to toll the statute of limitations and affirms its prior finding that Plaintiff's Section 1983 claim is time-barred.

[3] The statute defines the term "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyments of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

5

U.S.C. § 1981(a))[4]. "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights." *Id.* at 476 (citing § 1981(b)).

Plaintiff alleges that when he consented to the officers' initial questioning at his property but refused to allow them to search his vehicle or upstairs of his home, "a de facto contract was established regarding the scope of their search." (SAC ¶ 58.) Plaintiff argues that "the breach of contract during its performance phase, wherein the officers exceeded the consent given, highlights a differential in treatment potentially based on racial considerations[.]" (*Id.*) Plaintiff does not cite, and the Court is unaware of, any precedent to indicate that consenting to a police search creates a contract or contractual relationship between the officers and that individual. Because Plaintiff has not established discrimination related to a contract or contractual relationship with Defendants, he cannot state a claim for relief under Section 1981 and Count I is dismissed with prejudice.

### 2. Section 1985 Conspiracy

Plaintiff's bald assertion that Defendants "conspired and made an agreement" to "violate Plaintiff's rights" does not state a claim for relief under 42 U.S.C. § 1985 ("Section 1985"). (SAC ¶ 100.) *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."). "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or

---

[4] While interpreting the legislative history of Section 1981, the Supreme Court noted that the statute was passed to "ensure that Americans may not be harassed, *fired* or otherwise discriminated against in contracts because of their race." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 450 (2008) (citing S. Rep. No. 101-315, p. 6 (1990)) (emphasis in original).

indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). "To constitute a [Section 1985] conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

Plaintiff alleges that Defendants "coordinated to create a malicious and false arrest record" to target Plaintiff because of his race as an African-American man. (SAC ¶ 101.) Plaintiff points to two distinct actions by Defendant Mongiovi and Defendant Santarcangelo, the first in 2019 and the second in 2023, to demonstrate "a meeting of the minds" among Defendants. (*Id.* ¶ 102.) However, a plaintiff pleading a civil rights conspiracy cannot rest on bare accusations but instead must offer facts which show an actual agreement between the alleged conspirators and concerted action towards the object of the conspiracy. *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) ("to survive a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action"); *see also Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("the bare allegation of an agreement is insufficient to sustain a conspiracy claim"). It is insufficient for Plaintiff to allege that two wholly separate acts—carried out by separate actors over four years apart—reveals that there was an actual agreement between the Defendants to conspire against him. *See Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (affirming the dismissal of "conspiracy claims [that] do not appear to be based in fact, but merely upon [Plaintiff's] own suspicion and speculation"). Plaintiff has therefore failed to state a claim for relief, and Count V is dismissed with prejudice.

### 3. Other Federal Claims

Plaintiff also brings a *Bivens* claim[5] and a claim pursuant to the Civil Rights of Institutional Persons Act ("CRIPA")[6]. (SAC ¶¶ 122, 127.) First, a plaintiff may only assert a *Bivens* claim against a federal official. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). None of the named Defendants are federal officials or entities. Next, there is no private right of action under CRIPA; only the Attorney General can bring an action under this statute. *See Weisman v. N.J. Dep't of Human Servs.*, 817 F. Supp. 2d 456, 467 (D.N.J. 2011). Accordingly, Counts VIII and IV are dismissed with prejudice.

## B. State Law Claims

### 1. New Jersey Law Against Discrimination ("NJLAD")

Plaintiff asserts that Defendants discriminated and retaliated against him "through verbal and written communications due to his race" in violation of N.J. Stat. Ann. § 10:5-12(f). (SAC ¶ 87.) The relevant section of the NJLAD on which Plaintiff relies prohibits discrimination in a

---

[5] "The Supreme Court first implied a private right of action for damages for a deprivation of constitutional rights by federal officers in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*…Thus, such actions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) (internal citation omitted).

[6] The federal CRIPA statute provides, in pertinent part:

> "Whenever the Attorney General has reasonable cause to believe that any State…official, employee, or agent thereof…is subjecting persons residing in or confined to an institution, as…to egregious or flagrant conditions…the Attorney General, for or in the name of the United States, may institute a civil action in any appropriate United States district court against such party…"

42 U.S.C. § 1997a.

place of public accommodation.  *See* N.J. Stat. Ann. § 10:5-12(f).[7]  Plaintiff has not alleged that he was discriminated against in a place of public accommodation; he alleges that the discriminatory conduct occurred at his property and/or in written communications sent to his property.  (SAC ¶ 17.)  Plaintiff's claim is therefore unsupported by the factual allegations in the Complaint.  *See Harrison v. New Jersey Transit Bus Operations*, No. 17-7124, 2017 WL 5633207, at *3 (D.N.J. Nov. 22, 2017) (dismissing § 10:5-12(f) claim because plaintiff "present[ed] no facts supporting that she was denied access to a public accommodation based on her race.")

Plaintiff further alleges that Defendants violated § 10:5-12(d)[8] by "issuing premature and unfounded racially motivated bench warrants for his arrest" after Plaintiff made a formal complaint to the MPD about Sergeant Mongiovi's unlawful search and the subsequent citations on his property, and that Defendants "aid[ed], abet[ed], compel[ed] and/or coerc[ed] the unlawful, discriminatory, and retaliatory conduct as stated herein" in violation of § 10:5-12(e).  (SAC ¶¶ 90, 96.)  Because Plaintiff "failed to support a violation of NJLAD, [he] cannot support a claim for aiding and abetting in a violation of the same."  *Harrison*, 2017 WL 5633207, at *3.  Similarly, Plaintiff cannot claim that the Defendants took reprisals against him because Plaintiff "opposed any practices or acts forbidden under" the NJLAD, since Plaintiff cannot identify any acts taken by Defendants that are forbidden by the statute.  N.J. Stat. Ann. § 10:5-12(d).  Therefore, Plaintiff's claims under the NJLAD fail, and Counts III and IV are dismissed with prejudice.

---

[7] "For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation [] to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof" and for "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act…"  N.J. Stat. Ann. § 10:5-12(f).

[8] N.J. Stat. Ann. § 10:5-12(d) proscribes "any person [from] tak[ing] reprisals against any person because that person has opposed any practices or acts forbidden under this act."

### 2. Negligent Hiring

In order to succeed on a claim of negligent hiring or negligent supervision, "Plaintiff must prove: (1) the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons, and (2) the employer's negligence in hiring [or supervision] the employee resulted in the dangerous attribute proximately causing plaintiff's injury." *Johnson v. Provenzano*, No. 12-1253, 2014 WL 7011545, at *9 (D.N.J. Dec. 11, 2014), *aff'd*, 646 F. App'x 279 (3d Cir. 2016) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 515 (1982)).

Here, Plaintiff alleges that Defendants "sanctioned and condoned" their employees "to operate with racial, illegal and inappropriate behaviors." (SAC ¶ 116.) Plaintiff has provided no factual basis to establish any of the elements of a negligent hiring claim. *See Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Plaintiff does not specify which officers were negligently hired or which employers knew or had reason to know of their particular unfitness. Because "Plaintiff has not come forward with any information regarding these fundamental requirements [of a negligent hiring claim]," this Court must dismiss Count VII of the SAC. *Adams v. City of Camden*, 461 F. Supp. 2d 263, 269 (D.N.J. 2006).

### 3. Tort Claims

Plaintiff brings two tort claims under New Jersey law against Defendants: false light and intentional infliction of emotional distress. The New Jersey Tort Claims Act sets forth a procedural framework for asserting claims against public entities and public employees, *see* N.J. Stat. Ann. § 59:8–1 *et seq.*, which requires a claimant to file notice of a claim within ninety days of the "accrual of the cause of action." *Id*. § 59:8-8. "A suit will be dismissed if the claimant did not provide a

notice of claim to the entity within ninety days of the accrual[.]" *Davis v. Twp. of Paulsboro*, 371 F. Supp. 2d 611, 618 (D.N.J. 2005). The accrual date under the Tort Claims Act "is generally the date of the accident or date on which the alleged tort is committed." *Id.*

Defendants argue that because Plaintiff did not comply with the notice requirement of the Tort Claims Act, which is "a prerequisite to filing suit," Plaintiff is barred from bringing the tort claims raised in the SAC. (Def. Mot. at 29, 38.) The Court agrees. Plaintiff does not proffer any information about notice of a claim or the notice requirement. "Failure to provide notice within the statutory ninety day window is a ground for dismissal with prejudice." *Davis*, 371 F. Supp. 2d at 618 (citing *Sinclair v. Dunagan*, 905 F. Supp. 208, 212 (D.N.J. 1995)).

Plaintiff has also failed to present any facts to sufficiently plead a claim for false light or intentional infliction of emotional distress ("IIED"). To state a false light claim under New Jersey law, Plaintiff must allege that Defendants "made statements about [him] that constitute a major misrepresentation of [his] character, history, activities or beliefs, that such statements would be highly offensive to a reasonable person, and that [Defendants] acted with reckless disregard as to the falsity of the publicized matter." *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 424 (D.N.J. 2005) (internal citation and quotations omitted). And "to establish an IIED claim a plaintiff must prove (1) that the defendant acted intentionally or recklessly, (2) the conduct was 'so extreme and outrageous…as to go beyond all possible bounds of decency,' (3) proximate cause, and (4) severe emotional distress beyond which a reasonable person may be expected to endure." *Bernard v. Cosby*, 648 F. Supp. 3d 558, 575 (D.N.J. 2023) (quoting *Juzwiak v. Doe*, 2 A.3d 428, 433 (N.J. Super. Ct. App. Div. 2010)).

Plaintiff cannot identify *any* statement that Defendants about him to the public; instead he provides the Court with a conclusory statement that Defendants "put Plaintiff into a false light in

11

front of third parties to harm Plaintiff." (SAC ¶ 108.) Similarly, Plaintiff does not identify any conduct of the Defendants, to say nothing of conduct that is extreme and outrageous, to satisfy the pleading requirements of an IIED claim.[9] Courts are not required "to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft*, 556 U.S. at 686.

Because Plaintiff failed to comply with the notice requirement of the New Jersey Tort Claims Act and failed to state a claim for either tort, Counts VI and X are dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (ECF 49) is **GRANTED**. This is Plaintiff's third attempt to plead a cause of action against Defendants. In the instant Amended Complaint (*see* SAC), Plaintiff brings eight additional claims that are either procedurally deficient or fail to state a claim for relief. *See supra*. A court may dismiss a claim with prejudice when leave to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). A finding that leave to amend would be futile is proper when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 514 (E.D. Pa. 2018) (Baylson, J.) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Allowing Plaintiff a fourth attempt to plead a case against Defendants would be futile. The Court therefore dismisses Counts I through X of the SAC with prejudice. An appropriate order follows.

---

[9] Plaintiff pleads only that "Defendants caused Plaintiff damages because at all times they were aware of Plaintiff's sensitive nature, history of being racially profiled, and continued in bad faith to gain tactical advantages to put Plaintiff in fear of owning a home in the Town." (SAC ¶ 136.)

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    José R. Almonte, U.S.M.J.
       Parties